**The below described is SIGNED.**

**Dated: April 4, 2013**

_William J. Thurman_

**WILLIAM T. THURMAN**
**U.S. Bankruptcy Judge**



# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF UTAH

## SOUTHERN DIVISION

| In re: | Bankruptcy Number: 12-30207 |
|---|---|
| RUSSELL DOUGLAS WENSEL<br>KRISTA JOANNE WENSEL, | Chapter 13 |
| Debtors. | Chief Judge William T. Thurman |

**MEMORANDUM DECISION DENYING CONFIRMATION OF CHAPTER 13 PLAN**

The matter before the Court is the Chapter 13 Trustee's objection to confirmation of the Debtors', Russell Douglas and Krista Joanne Wensel's, Chapter 13 Plan dated August 9, 2012 (the "Plan"). The Court held an evidentiary hearing on confirmation of the Plan on February 15, 2013. The issue was whether including an amortization of past tax refunds on Schedule I fulfills the requirements of the disposable income test under 11 U.S.C. § 1325(b)(1)(B).[1] At the conclusion of the hearing, the Court took the matter under advisement. Based on the documents submitted and the Court's own independent review of the matter, statutes, and case law, on February 21, 2013, the Court issued an oral bench ruling, making findings of fact and

---

[1] All subsequent chapter and section references herein are contained in title 11 of the United States Code unless otherwise identified.

conclusions of law on the record, and reserved the right to issue a future written decision. This Memorandum Decision constitutes written memorialization of the oral bench ruling issued February 21, 2013.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

The Debtors filed for Chapter 13 bankruptcy on August 9, 2012.  The Debtors are "below-median," meaning that the Debtors' income is below the state's median income.  Mr. Wensel experienced a period of unemployment in 2010 and 2011 before gaining employment four months prior to filing.  On Schedule I, the Debtors listed $217 per month in income from estimated tax refunds.  To calculate the $217 refund amount, the Debtors took their total tax refunds for the past three years (2009, 2010, 2011) and divided by 36 to get a monthly refund average.  The average monthly income on Schedule I, when subtracted by the expenses listed on Schedule J, shows a total monthly net income of $91 to be contributed to the plan which will return $0 to unsecured creditors over the life of the three year plan.  The 2011 tax returns indicate that the Debtors' received $1,133 in refunds, which is the equivalent of $94.41 per month.

Kevin R. Anderson, the Chapter 13 Trustee (the "Trustee"), filed an Objection to Confirmation of the Plan on September 12, 2012.  The Trustee contends that the Plan does not comply with the disposable income requirements of § 1325(b) because the Debtors have not agreed to contribute three years of postpetition tax refunds to the Plan pursuant to In re Hughes, No. 08-24736, No. 08-29072, 2009 WL 2252181 (Bankr. D. Utah July 17, 2009) and In re Skougard, 438 B.R. 738 (Bankr. D. Utah 2010).

According to the Trustee, the Debtors' annualization of anticipated tax refunds on Schedule I, which the Debtors included in each proposed monthly plan payment as the

equivalent of the three-year tax requirement, is not sufficient to meet § 1325(b)(1)(B). Both the Debtors and Trustee contend that § 1325(b)(1)(B) supports their position. The parties have filed memoranda in support of and responses to the objection and request the Court determine whether the Plan should be confirmed.

## II.    JURISDICTION AND VENUE

The Court has jurisdiction over the parties and subject matter of this contested matter under 28 U.S.C. § 1334. Confirmation of the Plan is a core proceeding under 28 U.S.C. §157(b)(2)(J) and the Court has authority to enter a final order. Venue is proper in the Southern Division of the District of Utah under 28 U.S.C. § 1409. Notice of the hearing and opportunity to submit briefs is found to have been adequate.

## III.    DISCUSSION

Section 1325 contains the requirements for confirmation of a chapter 13 plan. A plain reading of § 1325 provides the circumstances under which a Court "shall" and "may not" confirm a plan. A Court may not confirm a plan over a chapter 13 trustee's or unsecured creditor's objection unless the plan provides for payment into the plan of all projected disposable income received by the debtor or payment in full of all valid claims of unsecured creditors. Section 1325(b)(2) defines disposable income as "current monthly income received by the debtor . . . less amounts reasonably necessary to be expended . . . for the support of the debtor and the debtor's dependents, charitable contributions, and necessary business expenses." The definition of "current monthly income" under § 101(10A) is "the average monthly income from all sources the debtor receives . . . without regard to whether such income is taxable income, derived during the six month period" preceding the bankruptcy filing. Current monthly income is computed utilizing the Statement of Current Monthly Income and Calculation of Commitment Period and

Disposable Income (the "Form 22C"), which must be filed in every chapter 13 case. However, if a debtor's income is "below median," meaning that the debtor's income is below the state's median income level, disposable income is not determined under § 1325(b)(3). Instead, the reasonableness of the expenses for below median debtors is determined by the Court through a review of the debtors' budget found on Schedules I and J.

Tax refunds are the product of a debtor's wages and are considered property of the estate under § 1306(a)(1) and (2) and are income under §1325(b)(2).[2] A majority of courts, including the Tenth Circuit Court of Appeals (the "Tenth Circuit") in In re Midkiff, 342 F.3d 1194 (10th Cir. 2003), have concluded that a debtor is required to contribute tax refunds to the plan because tax refunds are disposable income of the taxpayer. Otherwise, taxpayers could over-withhold in order to avoid paying to creditors their actual disposable income. The Bankruptcy Court for the District of Utah relied on Midkiff when deciding In re Hughes, which holds that "postpetition tax refunds are 'projected disposable income' and the postpetition portion of the Debtors' tax refunds must be paid into their plans."

There appears to be widely divergent treatment of tax refunds within plans. Although tax refunds are considered projected disposable income by many courts, jurisdictions have developed differing, and sometimes creative methods, in accounting for tax refund income in chapter 13 plans. There are jurisdictions that require 100% of tax refunds be turned over to the Trustee based on the presumption that tax refunds are disposable income,[3] while in other jurisdictions, courts require the IRS to send refunds directly to the Trustee.[4] Other courts review

---

[2] In re Skougard, 438 B.R. 738, 740 (Bankr. D. Utah 2010).
[3] In re Reshetov, No. 10-14183, 2011 WL 4102770 (Bankr. N.D. Okla. 2011) at *3-4 (finding that unless there is an exemption under state law, tax refunds are property of the estate).
[4] See U.S. v. Carroll, 667 F.3d 742, 744 (6th Cir. 2012) (referencing the practice of ordering the IRS to pay refunds to the Trustee).

4

each refund on a case-by-case basis, allowing for motions to modify for each year's returns.[5] Others allow for a specified portion of the refund to be retained, with the balance turned over to the Trustee.[6] Some jurisdictions allow for annualization of tax refunds based on actual tax liabilities.[7]

In 2010, the United States Supreme Court issued the Hamilton v. Lanning decision, which provides insight into the definition of projected disposable income in connection with § 1325(b)(1). The Supreme Court, in weighing the methods for properly projecting disposable income, favored a forward-looking projection as opposed to a mechanical or historical look-back approach.[8] The Court adopted the forward-looking approach to avoid the "senseless" result of the mechanical approach in cases where "a debtor's disposable income during the 6-month look-back period is either substantially lower or higher than the debtor's disposable income during the plan period."[9] Based on Lanning, in instances where there are changes in the debtor's income or expenses that are known or virtually certain at the time of confirmation, a court may account for these changes in calculating a debtor's projected disposable income.

As a result of the holdings in Midkiff, Hughes, and Lanning, this Court follows a practice established in Skougard ( the "Skougard method") in which all tax refunds are projected disposable income and should be turned over to the Trustee when received by the Debtor. However, recognizing a need for flexibility with unexpected expenses, the Court allows debtors to retain the first $1,000 of their tax refund, or up to $2,000 if the Debtor receives an Earned Income Credit ("EIC") or an Additional Child Tax Credit ("ACTC").

---

[5] In re Myles, No. 05-92125, 2006 WL 6591834 (Bankr. N.D. Ga. March 9, 2006); In re Michaud, 399 B.R. 365 (Bankr. D. N.H. 2008) (utilizing an individualized, case-by-case basis determination).
[6] In re Hilgendorf, No. 10-37111, 2011 WL 353240 (Bankr. E.D. Wis. Feb. 2, 2011), at *3 (relying on In re Stimac, 366 B.R. 889 (Bankr. E.D. Wis. 2007) which allowed the debtors to keep one-half of the tax refund).
[7] In re Hilgendorf, 2011 WL 353240, at *4.
[8] Hamilton v. Lanning, 130 S. Ct. 2464, 2471-75 (2010).
[9] Id. at 2475-76.

**IV**.  **ANALYSIS**

In this case, the Court is asked to decide whether the Debtors' proposed tax annualization fulfills § 1325(b)(1)(B) by "providing for all projected disposable income." The Debtors propose to account for tax refunds by averaging the past three years tax refunds, annualizing the average, and incorporating that amount on Schedule I. The Debtors present four reasons that the Plan should be confirmed as presented: first, that their proposed plan conforms with statute and case law; second, that their proposed plan reflects the reality of the debtors' financial circumstances; third, that the proposed treatment of tax refunds lessens the administrative burden on the Court, the Trustee, and the Debtors; and fourth, that the current practice is inequitable to below-median debtors and violates public policy. The Court addresses each argument.

**A.**  **The proposed plan does not conform to statute and case law.**

The Trustee objected to the proposed plan stating that it did not fulfill the disposable income test under §1325(b)(1) because the Debtors are not contributing all of their projected disposable income to the Plan. The Debtors have the burden to show that their proposed plan provides for payment of all projected disposable income.

In the Plan, the Debtors have taken the past three years of tax returns, annualized the amount, and proposed to include $217 per month as income into their plan as a result. The Debtors would have the Court rule that the term "provides" from § 1325(b)(2) need not exactly reflect actual disposable income because other expenses and income that are reported on Schedules I and J are estimates and not actual amounts.

It is clear from the Lanning decision that projected disposable income should include forward looking projection, not merely a mechanical, historical projection. This makes sense in the bankruptcy context because debtors often have experienced a change in financial position

and are no longer able to meet obligations. A historical approach, particularly averaging three years, would skew the average and not take into consideration recent or expected changes in financial positions. In this case, the Trustee points out that if the Debtors' most recent tax refund, 2011, is divided by twelve, the Debtors would pay only $94.41 per month – a difference of more than $120 and 2.3 times the amount actually claimed as income.

Additionally, the holding in Lanning states that a debtor's projected disposable income "may account for changes in the debtor's income or expenses that are known or virtually certain at the time of confirmation."[10] By using a three-year historical method, the Debtors' have failed to project income based on Mr. Wensel's period of unemployment and now current employment. This dramatically affects the projected disposable income of tax refunds. As a result, the Debtors are making a known change irrelevant to the calculus of projected disposable income.

Mr. Wensel's employment is vital to the calculation of tax refunds to be contributed to the plan. Tax liability and thus tax refunds are based on the amount of income a taxpayer earns throughout a given fiscal year. Additionally, tax refunds include credits like the EIC and ACTC, which can change each year in amount and eligibility.

Because of the difficulty in projecting tax returns accurately, the current practice ensures that the correct amounts of tax refunds are contributed into the plan. Debtors do not have to pay more or less than the actual amount of their tax refund and the Court does not have to consider motions to amend the plan every year to adjust for the difference in the projection and the actual refund amounts. Using the Skougard method there is flexibility to reduce hardship on the Debtors, who often have unexpected expenses at some point during the year, in allowing a retention of up to $2,000 of the refund. Accordingly the Debtors' first argument is unavailing, at least given the facts of this case.

---

[10] Id. at 2478.

7

**B.     The proposed plan does not accurately reflect the reality of the Debtors' financial circumstances.**

The Debtors' believe that a monthly contribution of tax refunds as they have listed on Schedule I provides the flexibility to reduce discretionary expenses during lean months. The Debtors argue that this is how all expenses are handled – a monthly amount is provided for as an estimate and the Debtors can adjust as needed.

The Court finds this argument unpersuasive. The inclusion of $217 per month as income does not have an actual corresponding receipt of income to the debtors. If the refundable amount comes from withholdings, they are held by the government, not in the hands of the Debtors. If the refundable amount comes from the EIC or ACTC, the amount will not be paid to the Debtors until after the return is filed. The tax refund is thus not received until the end of the fiscal year. The amount paid into the plan will have to diminish either the discretionary budget of the Debtors or reduce the feasibility of the plan if the discretionary budget cannot allow for more to be contributed to the plan. While the Debtors claim that the Plan reflects reality, in fact, the Plan calls for payments on a month to month basis with future income not yet available.

**C.     The proposed plan does not lessen the administrative burden on the Court, Trustee, or Debtors.**

Many cases are dismissed when debtors fail to turnover tax refunds to the Trustee. The failure to turnover tax refunds results in motions to dismiss, objections, and hearings before the Court. The Debtors argue that removing the requirement to turnover tax refunds to the Trustee when received would lessen the administrative burden of the Trustee and the Court.

Although the Court appreciates the desire to decrease the administrative burden that failure to turnover tax refunds creates, the Debtors' argument is unpersuasive. Allowing for total retention of tax refunds may lessen the motions to dismiss for failure to turnover tax refunds, but

8

because of the difficulty projecting taxes as previously discussed there would be more motions to amend, abate, and modify plans.

D. **The current practice does not discriminate against low-income debtors.**

The Debtors' contend that the Skougard method discriminates against low-income debtors. First, the Debtors argue that low-income debtors cannot maximize their Skougard allowance because they cannot adjust their W-4 withholdings as much as above-median debtors. Secondly, the Debtors argue that the estate is benefiting from public assistance provided through refundable tax credits, which was not the intended purpose of the credits.

One reason tax refunds are included as property of the estate is to prevent debtors from withholding as much as possible to experience a windfall at the end of the year at the expense of creditors. With the Skougard method however, there is an incentive to withhold more money if a debtor is eligible for EIC or ACTC. If a debtor is receiving less than $1,000 combined with both of these credits, extra withholdings can increase the maximum amount retained. For example, a debtor with $700 in refundable credits would most likely want to withhold $1,000 over the course of the year so that the debtor would be eligible to retain the full $1,700. If the debtor failed to withhold $1,000, then although eligible for $1,700, the debtor would only retain $700.

Even assuming arguendo that debtors take the time to plan out their tax withholdings with such precision as to estimate their EIC, ACTC, and wages, as well as other tax considerations, the Court believes that such abuses are rare and is not persuaded by Debtors' argument. Although the Debtors contend that this discriminates against low-income, below-median debtors, the Court also finds that this argument is not represented by the case before it. The Debtors here had a tax credit in 2011 for $596 in EIC. The total amount of the refund was $1,133. Under current practices, the Debtors should retain the entire tax return, however, their plan proposes

9

that they account for $217 per month as income and contribute $91 to the plan. Thus, at least given the facts of this case, the Court does not find that the Skougard method discriminates against low-income debtors through withholdings.

The Debtors next argue that tax refunds are intended to assist low-income citizens and those in need of additional assistance financially. They claim that these credits are paid for, not from withholdings of the debtor, but by society at large. These credits are taken by the estate, they allege, not for the benefit of the intended recipients, but for unsecured creditors.

Once again, the decision in Skougard sets a limit on the amount the estate can expect from these refunds. Although the Debtors' complain of misuse of assistance funds, they would retain more under current practices than the historical annualization alternative.

## V. CONCLUSION

The Court concludes that the proposed plan does not comply with the disposable income requirements of § 1325(b). The proposed annualization does not take into account changes in the Debtors' employment or tax liability, does not reflect the reality of the Debtors' income, and does not ease the administrative of the Courts or the Trustee. For the foregoing reasons, the Trustee's Objection to Confirmation is SUSTAINED.

_____ooo0ooo_____

## SERVICE LIST

Service of the foregoing **MEMORANDUM DECISION DENYING CONFIRMATION OF CHAPTER 13 PLAN** will be effected through the Bankruptcy Noticing Center to each party listed below.

Russell Douglas Wensel
Krista Joanne Wensel
1709 North Cedar Blvd.
Cedar City, Utah 84721
  *Debtors*

Geoffrey L. Chesnut
Red Rock Legal Services, P.L.L.C.
Mainstreet Plaza Executive Suites
20 North Main Street, Suite 305
St. George, Utah 84770
  *Debtor's Counsel*

Kevin R. Anderson
Office of the Chapter 13 Trustee
405 South Main Street
Suite 600
Salt Lake City, Utah 84111
  *Chapter 13 Trustee*